# United States Bankruptcy Appellate Panel
## For the Eighth Circuit

_____

No. 20-6023
_____

In re: Zachary L. Allen, II; Tiara C. Donegan

*Debtor*s

------------------------------

William H. Ridings, Jr.

*Respondent - Appellant*

v.

Daniel J. Casamatta, Acting U.S. Trustee

*Movant - Appellee*

_____

Appeal from United States Bankruptcy Court
for the Eastern District of Missouri - St. Louis

_____

Submitted: April 19, 2021
Filed:  June 21, 2021

_____

Before SHODEEN, DOW and RIDGWAY, Bankruptcy Judges.
_____

RIDGWAY, Bankruptcy Judge.

William H. Ridings, Jr. appeals the November 23, 2020 order of the bankruptcy court[1] granting the motion of the U.S. Trustee to determine the reasonableness of Mr. Ridings's attorney's fees. We have jurisdiction over this appeal under 28 U.S.C. § 158(b). For the reasons stated herein, we affirm.

## STANDARD OF REVIEW

We review the bankruptcy court's findings of fact for clear error and its conclusions of law *de novo*. *In re Zepecki*, 277 F.3d 1041 (8th Cir. 2002).

We also review "a decision regarding attorney fees for an abuse of discretion." *In re Clark*, 223 F. 3d 859, 862 (8th Cir. 2000) (citing *Grunewaldt v. Mutual Life Ins. Co. (In re Coones Ranch, Inc.)*, 7 F.3d 740, 744 (8th Cir. 1993)). To find an abuse of discretion here, we must be "convinced that no reasonable person could agree with the bankruptcy court." *In re Zepecki*, 258 B.R. 719, 723 (B.A.P. 8th Cir. 2001), *aff'd*, 277 F.3d 1041 (8th Cir. 2002).

## BACKGROUND

Mr. Ridings is a consumer bankruptcy attorney practicing in the St. Louis area. His practice, consisting of filing chapter 7 and chapter 13 cases, has been in business for twenty-two years. He was separately retained by two clients, Zachary Allen, II, and Tiara C. Donegan, to file a chapter 7 bankruptcy for each. The record reflects that both dockets were unremarkable.

On May 21, 2020, Mr. Ridings filed a chapter 7 petition and creditor matrix on behalf of Mr. Allen. The schedules, statement of financial affairs, and disclosure of attorney's fees were filed forty-four minutes later. Mr. Allen received his discharge September 23, 2020.

---

[1] The Honorable Barry S. Schermer, United States Bankruptcy Judge for the Eastern District of Missouri.

On May 22, 2020, Mr. Ridings filed a chapter 7 petition and creditor matrix on behalf of Ms. Donegan. The schedules, statement of financial affairs, and disclosure of attorney compensation were filed ten days later. She received her discharge the same day as Mr. Allen.

As part of his routine chapter 7 practice, Mr. Ridings offers debtors two options to pay his attorney's fees. Under the first option, a debtor could pay in full, up front and prepetition. In that instance, the charge would be $1,500, which would consist of $1,165 of attorney's fees and $335 for the filing fee. If a debtor selected the second option, to pay postpetition, the charge would be $2,000, or $1,665 of attorney's fees and $335 for the filing fee.

Under either payment option, Mr. Ridings provided "pre-filing services" that included meeting with the clients; analyzing the information from the clients' worksheet regarding their financial condition; providing the clients "due diligence, legal analysis and legal advice in order to help [them] make important legal choices and to comply with the bankruptcy code and rules;" and preparing and filing the chapter 7 petition, pre-filing credit counseling certificate, and list of creditors.

The "post-filing services" promised by Mr. Ridings included: the preparation and filing of schedules, statement of financial affairs, means test calculations and disclosures; attending the meeting of creditors; "administrating and monitoring" the clients' case and maintaining a line of communication with them; responding to inquiries from the case trustee; "reviewing and advising" the clients regarding any reaffirmation agreements, redemptions, or any motions for stay relief; and "[a]ny [unspecified] legal service required by the local rules."

In these cases, both clients selected the "later pay" option, which allowed payment to be made postpetition monthly for twelve months – $167 for Mr. Allen

and $117 for Ms. Donegan, who had paid Mr. Ridings $600 prepetition.[2] In each case, the U.S. Trustee filed a motion challenging the higher amount charged under the post-filing payment agreements, claiming the fees were "unreasonable" given the inability of both Mr. Allen and Ms. Donegan to pay the fee charged by Mr. Ridings up front. The motion asked that any compensation paid to Mr. Ridings that exceeded the reasonable value of the services be returned to the respective debtors.

Mr. Ridings opposed both motions in a consolidated response. The bankruptcy court, with the parties' consent, conducted an evidentiary hearing involving both cases. At the conclusion of the hearing the bankruptcy court made oral findings of fact and conclusions of law. In each case, it approved attorney's fees of $1,165 as being reasonable, and excused each debtor from any payment of attorney's fees that exceeded that sum. Any fees paid over that amount were found to be unreasonable and ordered returned to the appropriate debtor.[3]

## DISCUSSION

This case presents the issue of the reasonableness of fees charged by a consumer bankruptcy attorney for all work associated with filing a chapter 7 case

---

[2] To finance his bifurcated fee arrangements, Mr. Ridings uses a third-party financing service called Fresh Start Funding, LLC. Under this line of credit, Fresh Start advances Mr. Ridings up to 75% of the total fees charged his client; 60% of the total is paid to him up front, with 15% of the total held back in the event of non-payment of the fees by the client. Payments are made by the client directly to Fresh Start; if the client defaults, Fresh Start may initiate collection against the client. The U.S. Trustee questioned Mr. Ridings's fee arrangement with Fresh Start; that was the reason for the second meeting of creditors in each of these cases. Mr. Ridings's arrangement with Fresh Start was not an issue addressed in the bankruptcy court's findings, however, and nothing about that arrangement changes our analysis.

[3] The bankruptcy court clearly ordered that the "fees" referred only to the adjusted award of attorney's fees, and not the filing fee.

using a bifurcated arrangement.[4] The use of such a fee arrangement is seen as a means for a consumer bankruptcy attorney to remain competitive among many such attorneys vying for clients in the same geographic area. These arrangements are designed to offer the would-be debtor the option to pay reduced or no fees up front by dividing the attorney's services in the case into two parts: prepetition services and postpetition services. Because any prepetition obligation that is not paid prior to a chapter 7 filing is subject to discharge under § 524 of the Bankruptcy Code, these bifurcated agreements are designed to change the attorney's fees into a postpetition, nondischargeable debt that can be collected from the client without violating either the automatic stay or the discharge injunction.

As the proponent of the request for approval of his fees, Mr. Ridings bears the burden of proving the reasonableness of the fees. *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983); *In re Clark*, 223 F.3d 859, 863 (8th Cir. 2000). As will be discussed, he has not met that burden here.

The Bankruptcy Code is clear in its provisions governing the nature of the fee arrangement between a debtor and the debtor's attorney. Section 329 provides in pertinent part:

(a) Any attorney representing a debtor in a case under this title, or in connection with such a case, whether or not such attorney applies for compensation under this title, shall file with the court a statement of the compensation paid or agreed to be paid, if such payment or agreement was made after one year before the date of filing of the petition . . .

---

[4] This is the only issue presented to us. We decline to express an opinion on the validity of bifurcation agreements generally or any problems associated with the "unbundling" of legal services, i.e., ". . . limited scope of representation [as] an alternative to traditional, full-service representation. Instead of handling every task in a matter from start to finish, the lawyer handles only certain parts and the client remains responsible for the others." *American Bar Association,* Unbundling Resource Center, 2012.

5

    (b) If such compensation exceeds the reasonable value of any such services, the court may cancel any such agreement, or order the return of any such payment, to the extent excessive, to –
    (1) the estate, if the property transferred –
        (A) would have been property of the estate; or
        (B) was to be paid by or on behalf of the debtor under a plan under chapter 11, 12, or 13 of this title; or
    (2) the entity that made such payment.

11 U.S.C. § 329.

The procedural mechanism for the application of this statute is Fed. R. Bankr. P. 2017. This rule allows the court, after notice and a hearing, to determine whether payments made to an attorney either before or after the filing of a petition are excessive. Fed. R. Bankr. P. 2017(a), (b).[5]

Here, both debtors chose the second option, with Mr. Allen paying $0.00 prepetition and Ms. Donegan paying $600. In doing so, each would pay an extra $500 later. Any balance owed would be paid by the debtor postpetition in a series of twelve equal monthly payments. Both fee arrangements were clearly worded and explicit in their terms, and because Mr. Ridings clearly disclosed such arrangements, there was no violation of § 329(a). Both cases were routine; there were no motions to dismiss, no motions for relief from the automatic stay, and no complaints seeking to except a debt from discharge or an outright denial of discharge. Further, neither case involved a reaffirmation agreement, a means test issue, or a debtor audit. Again, there was nothing remarkable about either of these cases.

---

[5] "The test under § 329 measures *reasonable value of the services* provided by the attorney. To the extent that the fees due or paid are not reasonable in light of the services provided, the court may cancel the fee agreement or order disgorgement." *In re Redding*, 247 B.R. 474, 478 (B.A.P. 8th Cir. 2000) (emphasis in original). The *Redding* court also held that "§ 329 is about disclosure and reasonableness of attorney fees, and governs the fee arrangements between a debtor and the attorney representing the debtor." *Id*.

The bankruptcy court found that Mr. Ridings provided the same services he would have provided to both Mr. Allen and Ms. Donegan, regardless of whether his fees were paid under the prepetition or postpetition payment option. He provided prepetition counseling, filed the petition, filed the statement of financial affairs, filed all documents required by § 521 of the Bankruptcy Code, and attended two § 341 hearings.[6] Mr. Allen and Ms. Donegan each received a discharge in due course, and the trustee filed a report of no distribution in each case. Based on these findings, the court found that the "extra $500" contemplated under the post-filing fee arrangement exceeded the value of the services provided by Mr. Ridings.

Mr. Ridings argues that the bankruptcy court was required to consider the reasonableness of his fees in these cases under a lodestar analysis, that is "the number of hours reasonably expended on the litigation [is] multiplied by a reasonable hourly rate." *Hensley v. Eckerhart*, 461 U.S. at 433.

Mr. Riding's argument misses the mark. Courts are not bound to apply the lodestar calculation in every case where attorney's fees are challenged. For example, in *In re Kula*, we found that in chapter 13 cases, wherein most of the attorney services are "normal and customary," the lodestar analysis may not be the best method to use when determining reasonableness. 213 B.R. 729, 737 (B.A.P. 8th Cir.1997). Similarly, the Eighth Circuit affirmed the reduction of legal fees in a chapter 7 case based on a consideration of the "lack of complexity and the customary legal fees that are awarded in [the relevant] community for planning, preparing, and filing the necessary schedules and petition for a Chapter 7 case." *Snyder v. Dewoskin (In re Mahendra)*, 131 F.3d 750, 758 (8th Cir. 1997). *See also*, *In re Geraci*, 138 F.3d 314, 319 (7th Cir. 1998).

---

[6] Regarding the matter of extra charges for Mr. Ridings's attendance at a second § 341 meeting, the court noted that "Mr. Ridings testified honestly that notwithstanding the agreement, the contract, if you filed upfront the full filing fee of the court and the attorney's fees, continued 341s would be included in that charge. And I've already said that they were included in the $1,665 two-payment charge." Tr. at 130.

Indeed, Mr. Ridings testified that his primary practice involves use of "no look" fees in chapter 13 cases. He also testified that he does not keep contemporaneous time records when performing services in his chapter 7 cases. Because there were no time records kept, no lodestar analysis could be undertaken. Mr. Ridings also stated that he does not charge an hourly rate for his consumer bankruptcy cases and never has. He stated that the fees he charges for typical chapter 7 cases are all the same. The only evidence Mr. Ridings was able to produce in support of his lodestar argument was Exhibit L, a so-called "demonstrative exhibit," which purported to show a breakdown of hourly legal services he might charge a debtor in a hypothetical chapter 7 case. However, it bore little resemblance to Mr. Ridings's customary practice in handling chapter 7 cases and included work that typically does not arise in a straightforward chapter 7 filing. The exhibit lacked any relevance as to what services were actually performed by Mr. Ridings in *these* cases, as opposed to some hypothetical case. Simply put, Mr. Ridings presented no evidence that would enable the court to conduct a lodestar analysis.

We find no clear error in any of the findings of fact made by the bankruptcy court. It was well within its authority to reduce Mr. Ridings's fees by $500 and did not abuse its discretion in doing so.

## CONCLUSION

For the reasons stated above, we affirm the bankruptcy court.

_____

# United States Bankruptcy Appellate Panel
### *For The Eighth Circuit*

Thomas F. Eagleton U.S. Courthouse
111 South 10th Street, 24th Floor
**St. Louis, Missouri 63102**

**Michael E. Gans**
*Panel Clerk*

VOICE (314) 244-2430
www.ca8.uscourts.gov

June 21, 2021

Mr. William H. Ridings Jr.
RIDINGS LAW FIRM LLC
Suite 205
2510 Brentwood Boulevard
Brentwood, MO  63144

Mr. Daniel Eugene Garrison
PROTEGO LAW, PLLC
Suite 100
1805 N. Scottsdale Road
Tempe, AZ  85281

RE:  20-6023  William Ridings, Jr. v. Daniel Casamatta

Dear Counsel:

Enclosed is a copy of the opinion filed today in the referenced case.  Judgment in accordance with the opinion is also entered today.

Michael E. Gans
Panel Clerk

CAH

Enclosure(s)

cc:  Ms. Dana McWay
  Mr. Paul Randolph
  Ms. Carole J. Ryczek
  Ms. Sumi Sakata
    Bankruptcy Court Case Number(s):  20-42663
                                       20-42689

**United States Bankruptcy Appellate Panel**
*For The Eighth Circuit*
Thomas F. Eagleton U.S. Courthouse
111 South 10th Street, 24th Floor
**St. Louis, Missouri 63102**

**Michael E. Gans**
*Panel Clerk*

**VOICE (314) 244-2430**
www.ca8.uscourts.gov

June 21, 2021

West Publishing
Opinions Clerk
Building D D4-40
610 Opperman Drive
Eagan, MN 55123-0000

    RE: 20-6023 William Ridings, Jr. v. Daniel Casamatta

To Whomever It May Concern:

    Enclosed is a copy of the opinion of this Panel filed as noted.

    Counsel who represented the appellant was Daniel Eugene Garrison of Tempe, AZ.

    Counsel who represented the appellee was Sumi Sakata of Washington, DC.

    The judge who heard the case in the bankruptcy court was the
Honorable Barry S. Schermer. The judgment of the bankruptcy court was entered on November 23, 2020. November 23, 2020.

    If you have any questions concerning this case, please call this office.

                                      Michael E. Gans
                                      Panel Clerk

CAH

Enclosure(s)

    Bankruptcy Court Case Number(s): 20-42663
                                                  20-42689